### James E. Thornley et al. v. Thomas Kershaw.

1. WILLS—*Lapsed Legacies.*—A testator made a will bequeathing all his property to a brother, Hugo Thornley, his heirs and assigns. At the time of the testator's death, his brother, Hugo Thornley, had died, and the only heirs at law were sixteen nephews and nieces, children of the deceased brother, Hugo Thornley, and of three deceased sisters. *Held,*

The bequest to Hugo Thornley lapsed by reason of his death before that of the testator.

The estate passed to the descendants of the deceased brother and deceased sisters *per stirpes* and not *per capita.*

2. ADMINISTRATION OF ESTATES—*Power of Court to Set Aside Order of Distribution.*—Where, after an order of distribution has been made, and afterward a party files objections to the report of the administrators on the ground that they obtained a conveyance of his interest through fraud and deception, the court has power to set aside its order of distribution without a previous decree of a court of chancery canceling the conveyance.

3. COMPROMISE—*Of Disputed Claims—Courts Favor Them.*—Courts look with favor upon the amicable settlement of disputed claims between litigants.

Petition to Vacate an Order of Distribution.—Appeal from the Circuit Court of Morgan County; the Hon. OWEN P. THOMPSON, Judge

presiding.   Heard in this court at the November term, 1902.   Reversed and remanded with directions.   Opinion filed April 30, 1903.

On March 26, 1901, Samuel Thornley died, leaving an estate (chiefly personal) of about $100,000.   He left as his only heirs at law sixteen nieces and nephews, children of one deceased brother, and three deceased sisters.   The seven appellants in this suit are the children of the deceased brother, Hugo Thornley.   The appellee was the only child of Ann Kershaw, a deceased sister.   There were also six children of a deceased sister, Betty Wood, and two sons of another deceased sister, Mrs. Waggoner.   The Wood heirs and the Waggoner heirs disposed of their interests to appellants and are not parties to this suit.

Soon after the death of Samuel Thornley there was presented to the County Court of Morgan County for probate a will, whereby he bequeathed all his property to "Hugo Thornley, his heirs and assigns."   The probate of the will was resisted upon the ground that the legacy and devise contained in it had lapsed on account of the death of Hugo Thornley in the lifetime of the testator, by reason of which the deceased died intestate.   A hearing resulted in the County Court admitting the will to probate.   About that time efforts were made for a compromise.   It was contended by appellants, in addition to their contention that they were entitled to all the property under the will, that if the estate be held intestate it should be distributed *per capita* among the sixteen nieces and nephews.   The others contended that it should be distributed *per stirpes, i. e.*, into four equal parts to be divided between the children of the respective sisters and brother.   As a result of the compromise appellants purchased the interests of the other heirs at various sums.   For appellee's interest they paid him $5,370, and he executed to them his deed for the same.

On July 24, 1901, James E. Thornley and E. H. Thornley, administrators, filed an inventory in which they reported cash on hand to the amount of $30,000.   They also reported that the children of Hugo Thornley had purchased and procured conveyances from all the other heirs

of their interests in the estate, and asked for an order allowing them to distribute the $30,000 among them. An order to that effect was made by the court, and the $30,000 was so distributed.

Some months afterward Thomas Kershaw presented to the County Court a petition in which he set up that the sale and assignment of his interest for $5,370 was procured at a time when he was, by reason of intoxication and mental disease, incapable of contracting, and that appellants, by fraud and deception as to the value of his interest in the estate, procured him to make an assignment of the same to them. He asked that the order for distribution be set aside, that he be permitted to file objections to the report of the administrators, and that they be ordered to pay him the one-fourth interest inherited by him, less the $5,370 already paid. The County Court set aside the order to distribute, sustained Kershaw's objections to the report of the administrators and made another order of distribution, in which the court refused to recognize the deed to appellants as an equitable assignment of Kershaw's interest to them, and directed the administrators to pay to Kershaw his full share of one-fourth, less the amount already paid him by appellants.

An appeal to the Circuit Court was taken, and a hearing there resulted in a finding that Kershaw was entitled to one-fourth part of the estate, and that the deed of assignment from Kershaw to appellants was void. The court ordered the estate to be distributed *per stirpes* among descendants of the brother and sisters of Samuel Thornley, giving each stirp one-fourth. From the order there entered this appeal is prosecuted.

MILLS & McCLURE, attorneys for appellants; EDWARD CLIFFORD, of counsel.

JOHN A. BELLATTI, attorney for appellee.

MR. JUSTICE HARKER delivered the opinion of the court. Appellants urge as ground for reversing the judgment

in this case, first, that the County Court had not juris-
diction to set aside the order of distribution until Kershaw's
deed to appellants was canceled by a court of chancery;
second, that appellants, as the heirs and children of Hugo
Thornley, took all the estate by virtue of the will, and that
it was error to hold that Samuel Thornley died intes-
tate; third, that if Samuel Thornley died intestate, then
his estate passed to the descendants of his deceased brother
and sisters *per capita* and not *per stirpes;* fourth, that the
evidence was insufficient to justify the court below in
holding that the deed from Kershaw to appellants was
fraudulently obtained and for that reason did not convey
to appellants his interest in the estate.

We are of the opinion that the County Court had juris-
diction to set aside its former order of distribution without
a previous decree of a court of chancery canceling the
deed from Kershaw to appellants; that appellants took
nothing under the will of Samuel Thornley, for the reason
that Hugo Thornley died before the testator; that Samuel
Thornley died intestate and that his estate passed to the
descendants of his deceased brother and deceased sisters *per
stirpes* and not *per capita.* We do not care to elaborate
our views upon those points of contention. Our holding
upon the other contention is entirely decisive of the con-
troversy.

Is the evidence in the record sufficient to justify a
holding that the deed of assignment from Kershaw to
appellants was fraudulently obtained or that he was at the
time mentally incapable of executing such a deed? Ker-
shaw set up in his petition that at the time of executing
the deed his mind was so debilitated from the long and
continued use of intoxicating liquor and from the effect of
liquor taken that day that he did not and could not com-
prehend the force and effect of his act. That contention
is vigorously argued by his counsel in this court. While
his testimony is in support of it, and there is some corrob-
oration by the testimony of others relating to his drinking
habits, it is completely refuted by all the facts and circum-

Thornley v. Kershaw.

stances attending the transaction and by the testimony of disinterested witnesses who saw and conversed with him that day. While he was a man who had drunk more or less for the greater part of his life, it appears that his excesses in that direction had not prevented him from following a trade that required him to stand and move about on high and dangerous scaffolds. When he signed the deed and accepted the consideration of $5,370, he had taken but two or three drinks that day, and they were several hours apart, not sufficient of themselves, according to his own testimony, to perceptibly affect him. A careful analysis of the evidence satisfies us that he had full and complete comprehension of what he was doing. The evidence does not disclose any justification for the charge of a conspiracy by the Thornleys to defraud Kershaw or the insinuations that their attorney, Mr. Mills, was a party to such conspiracy. When Samuel Thornley died and his will was presented for probate appellants believed that his entire estate passed to them as the heirs of their father under the terms of the will. It is apparent that such was the intention of the testator. Although probate of the will was resisted upon the ground the legacy and devise had lapsed, it was admitted to probate. There was a serious contention, also, over the proposition as to whether in the event of it being held that deceased died intestate the heirs would take *per capita* or *per stirpes*. Counsel for appellants contended that they would take *per capita*. Counsel on the other side took an opposite view, although he had before then given it as his opinion that they would take *per capita*. The outlook for expensive and protracted litigation over the estate was strong. It was but natural then that appellants should be anxious for a compromise, and we are not disposed to attribute to the earnest efforts made by them in that direction a corrupt purpose to over-reach and defraud the other heirs. Whatever view may have been reached by Mr. Mills, after a careful examination, of the question of his clients' rights under the will, it is clear that he has always firmly believed that, in the event

of its being held that Samuel Thornley died intestate, the sixteen nieces and nephews would share alike in the distribution of the property. We can not look at the efforts made by him toward effecting a compromise in any sense as dishonorable. He fully explained to Kershaw when he took his acknowledgment to the deed that he was assigning and conveying to appellants his entire interest in the estate. Kershaw was made to understand that he was being paid $5,370 for his entire interest, whether a one-fourth or a one-sixteenth. The evidence abundantly shows that all the nephews and nieces whom the deceased intended by his will to exclude, were anxious to effect a settlement out of court. The first proposition for a compromise came from them, which was to divide the estate into sixteen equal parts and each of them contribute to the Thornley heirs $1,000. They freely communicated with James Thornley, the active and leading spirit in that branch of the heirs, before and after the probate of the will. Kershaw was just as anxious for a compromise as the others.

It is strenuously urged that the consideration paid Kershaw was so grossly inadequate as to raise a conclusive presumption of fraud. A number of leading cases are cited where courts of equity have been sustained in rescinding contracts for fraud because of inadequacy of consideration. They are cases in which the party in whose favor the relief was granted was either so weak in mind as to render him incapable of exercising sufficient judgment to care for his own interests or was kept in ignorance of some valuable property right. Both of those conditions are claimed in this case. As we have seen, Kershaw, when he disposed of his interest and accepted the consideration, was of sufficient mental capacity to make the contract. He had mind sufficient to comprehend and did comprehend the effect of his act. Nor did he act in ignorance of any property right. His attorney had advised him and he was contending that he was entitled to what his mother, if living, would have inherited, one-fourth of the estate.

Thornley v. Kershaw.

In view of the different contentions of the parties in interest and the attending condition the acceptance of $5,370 for his interest was not so foolish as it at first blush appears. He knew that his uncle had intended to exclude him from any share of his estate. The Thornleys were contending for the entire estate under the will, and the will, after a contest, had been admitted to probate. In the event of the will being held void it was contended that he would be entitled to only one-sixteenth of the estate, and that contention was fortified by the opinion of an experienced lawyer as well as by the first opinion of his own lawyer. In the event of its being decided that he was entitled to one-fourth, then he would receive but $12,000, because he testified that he had signed a written contract to pay his attorney one-half of what should be recovered for him in the courts. If a decision of the court should give him only one-sixteenth, then he would, under the contract with his attorney, receive but $3,125. Under his contract he would be compelled to pay his attorney only $500, in the event of a settlement out of court. All those things, together with the natural desire which every one has to avoid protracted litigation, were doubtless potent factors in bringing Kershaw's mind to the terms of the compromise.

Courts have ever looked with favor upon the amicable settlement of disputed claims between litigants. We are clearly of the opinion that the settlement in this case should stand. In that view no one but the Thornley heirs were interested in the estate when the order for a distribution of the $30,000 was made, and Kershaw's petition should have been dismissed. The judgment will be reversed and the cause remanded, with directions to the Circuit Court to dismiss the petition and enter such other orders as may be consistent with this opinion.